UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JESSE E. POULIN, § | | |
| Institutional ID No. 544205, § | | |
| § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | 1:12-CV-00126-BL | |
| ROBERT G. LEAL, *et al.*, § | ECF | |
| § | | |
| § | | |
| Defendants. § | Referred to U.S. Magistrate Judge | |

**REPORT AND RECOMMENDATION**

Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on July 13, 2012 (Doc. 1). He alleges that his rights under the United States Constitution and under federal and state law were violated by staff members at the French Robertson Unit ("Robertson Unit") of the Texas Department of Criminal Justice - Institutional Division ("TDCJ") and by various TDCJ officials, who subjected him to a visual body cavity search in the presence of female officers. The Defendants in this case include Richard G. Leal, Adrian L. Correll, Margret A. Smith, Timothy A. Huggins, Clayton J. Arrendall, Marcus W. Huggins, Amber L. Bartley, Smadar Cohen, Jessica L. Richards, and Gary M. Cotton.

This matter was reassigned to the United States Magistrate Judge on July 27, 2012 (Doc. 6). The court entered an Order Setting Evidentiary Hearing on August 30, 2012 (Doc. 7), setting an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) and 28 U.S.C. § 1915. Plaintiff refused his consent to having the United States Magistrate Judge conduct all

proceedings in this case pursuant to 28 U.S.C. § 636(c) on September 11, 2012 (Doc. 9). Plaintiff appeared at the *Spears* hearing on October 18, 2012 and provided testimony (Doc. 10).

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint as supplemented by his testimony at the evidentiary hearing in this case, and makes the following report and recommendation to the United States District Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, as developed by his testimony, Plaintiff claims that:

1. Plaintiff has been confined to the Robertson Unit during all times relevant to the claims in his complaint.

2. Plaintiff is a Muslim. He believes that he should never be unclothed except before his wife.

3. On February 16, 2012, Plaintiff was in the 4D wing, 3 section dayroom, participating in recreation, when the section and dayroom were subjected to a search involving all of the inmates and their personal effects. Such searches are routine and non-emergent.

4. Plaintiff, as well as in the other inmates in the dayroom, was subjected to a visual cavity strip search.

5. Four female correctional officers were present during the search. One of the female officers was Jewish. The female officers searched inmates' personal items. The inmates undergoing strip searches were in direct view of the female officers.

6. The strip search, particularly with female officers present, violated Plaintiff's religious beliefs as a Muslim. As a result, Plaintiff thereafter avoided the dayroom in the evening.

Plaintiff is seeking declaratory and injunctive relief, attorneys fees and costs, and an award of damages.

## II.    ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted.  These provisions thus apply to this *in forma pauperis* prisoner civil rights action.  *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999).  "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact."  *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998).  A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless.  *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed.  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1).  A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions.  *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and claims in his complaint and testimony to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

**A.    Plaintiff's constitutional claims**

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

Plaintiff alleges that the Defendants have violated his right to free exercise of religion. He alleges that he believes in modesty and should not be subjected to strip searches, believing that men should only be unclothed fully in front of their wives. Plaintiff argues that in order to exercise his religion, he must not be subjected to strip searches, particularly strip searches in front of other inmates, guards, or female employees. Plaintiff specifically notes that one of the female guards present during the search was Jewish. Plaintiff also alleges that he was subjected to an unreasonable search or seizure.

Plaintiff argues that under the Religious Land Use of Institutionalized Persons Act ("RLUIPA"), and the Texas Religious Freedom Restoration Act ("TRFRA"), Defendants are required to use the least restrictive means of limiting free exercise of religion. Plaintiff argues that the Defendants could have conducted any necessary strip searches within the shower stalls in the dayroom, affording Plaintiff and other inmates privacy and bodily integrity.

Prisoners retain those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the prison. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). While imprisonment "necessarily entails a loss of manifold rights and liberties," a prisoner's right to practice his religious beliefs is protected. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). This right is, however, subject to reasonable restrictions and limitations necessitated by penological goals. *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). A prisoner "is not free to do that which he might wish to do, nor may he do allowable things at a time and in a manner he might prefer." *Muhammad*, 966 F.2d at 902. Several factors are relevant in determining whether a prison regulation infringes on an inmate's constitutional rights: (1) is there a valid, rational correlation

between the prison regulation and the legitimate governmental interest advanced; (2) are there alternative means of exercising the rights that remain available to the inmates; and (3) what is the impact of an accommodation in favor of the inmate on prison staff, other inmates, and the allocation of prison resources generally. *Id*. A prisoner's First Amendment rights may be circumscribed when legitimate penological objectives such as institutional order and security outweigh the concerns associated with preservation of the inmate's right. *See Thornburgh v. Abbott*, 490 U.S. 401, 404, 419 (1989). The court will accord "great deference to prison administrators' judgments regarding jail security." *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

The Fifth Circuit has recognized that a prisoner possesses a "constitutional right to bodily privacy" that "is minimal, at best," *Oliver*, 276 F.3d at 745; and "loses those rights that are necessarily sacrificed to legitimate penological needs." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994). The Fifth Circuit has held that strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional and did not constitute an infringement upon the plaintiff's Fourth Amendment rights to be free from an unreasonable search. *Elliott*, 38 F.3d at 190-92. The court noted in *Elliott* that "[t]he Fourth Amendment . . . requires that "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed." *Id.* (citing *United States v. Lilly*, 576 F.2d 1240, 1244-45 (5th Cir. 1978)). The court explained that "[b]ecause a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden.*" Id*.

In *Oliver*, the court noted that it has twice "found that security concerns can justify the strip search of a male inmate in front of a female guard." 276 F.3d at 743. The court upheld the decision of the district court, which found that security concerns justified cross-sex surveillance of prisoners.

*Id.* at 746. Various unpublished district court cases in the Fifth Circuit have found that strip searches in the presence of prison officers of the opposite sex did not meet the exaggerated or excessive standard and did not violate a prisoner's Fourth Amendment rights. *See, e.g., Rodgers v. Marquandt*, 2011 U.S. Dist. LEXIS 65644 (N.D. Tex June 20, 2011); *Urias v. Grounds*, 2011 U.S. Dist. LEXIS 144202 (E.D. Tex. December 15, 2011); *Beasley v. Holman*, 2011 U.S. Dist. LEXIS 74576 (E.D. Tex. July 11, 2011). This may be contrasted with *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir. 1999), wherein the Fifth Circuit noted that it was possible that the a strip search of a male inmate by a female officer, in the absence of an emergency or extraordinary circumstances, could constitute a viable Fourth Amendment claim. However, in *Moore*, the court stated: "A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore*,168 F.3d at 236-237.

      The RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A government regulation substantially burdens a "religious exercise" for the purposes of the RLUIPA if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).

Under RLUIPA, the plaintiff bears the initial burden of proving that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *DeMoss v. Crain*, 636 F.3d 145, 150 (5th Cir. Tex. 2011*) (*quoting *Mayfield*, 529 F.3d at 613).  A government regulation substantially burdens a "religious exercise" for the purposes of the RLUIPA if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).

The court accepts Plaintiff's allegations that he believes in modesty and humility and that he is opposed to strip searches.  However, Plaintiff's allegations fail to demonstrate that he has been prevented from exercising his religious beliefs or that he has been substantially burdened in exercising his religion.  Plaintiff's testimony demonstrates that his activity and beliefs as a Muslim were not impacted by the searches.  Plaintiff indicated that searches of inmates and their belongings as well as of the dayroom for contraband and other such items are routine and generally applied. While Plaintiff indicated that he avoids the dayroom at night, to avoid being searched in the dayroom, Plaintiff's factual allegations fail to demonstrate that he was subjected to an unreasonable search, was deprived of his rights to free exercise of religion, or was denied of his rights under RLUIPA.

Plaintiff's factual allegations, accepted as true, demonstrate the inherent security interest of the officers and the institution in the situation described. Plaintiff also alleges that the Defendants violated applicable TDCJ policy in conducting the strip search. The court notes that a prison authority's failure to follow internal rules or administrative procedures does not give rise to any issue of constitutional magnitude as long as minimum constitutional requirements are met.  *See, e.g., Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Having carefully considered Plaintiff's allegations of an unreasonable search or seizure, a violation of his right to bodily integrity, and violation of his rights to free exercise of religion as protected by the Constitution and RLUIPA, the court finds that such claims lack an arguable basis in law or fact; and **RECOMMENDS** that such claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Plaintiff has asserted claims under the TRFRA. The exercise of pendent jurisdiction is discretionary with the district court. *Wong v. Stripling*, 881 F.2d 200, 203-04 (5th Cir. 1989). The court has found that all of Plaintiff's free exercise of religion and RLUIPA claims lack an arguable basis in law or fact and recommends that they be dismissed. The court further **RECOMMENDS** that the United States District Judge **DECLINE** to exercise pendent jurisdiction over Plaintiff's state law claims under TRFRA.

Plaintiff has indicated that he is suing each of the Defendants in their individual and official capacities with regard to both his constitutional and RLUIPA claims.

The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar County Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n.9 (5th Cir. 1991)). A state's sovereign immunity is not waived for claims pursuant to 1983. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979)). Moreover, the State of Texas has not consented to this suit. *Id.* (citing *Emory v. Tex. State Bd. of Med. Exam'rs*, 748 F.2d 1023, 1025 (5th Cir. 1984)). As an instrumentality of the state, TDCJ is immune from a suit for money damages under the Eleventh Amendment. *Talib*, 138 F.3d at 213. Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Ganther v. Ingle*, 75 F.3d 207,

209 (5th Cir. 1996). The Eleventh Amendment immunity thus extends to TDCJ-ID officers acting in their official capacity. *Aguilar*, 160 F.3d at 1054.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity noting that a state cannot confer authority on its officers to violate the Constitution or federal law. *See Aguilar*, 160 F.3d at 1054. However, under this exception an individual official may be liable only for implementing a policy that is "itself [ ] a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)). Plaintiff's allegations fail to demonstrate any such policy.

Moreover, as States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA, Plaintiff's claims for money damages against the Defendants in the official capacities, lack an arguable basis in law or fact. *See Sossamon*, 131 S. Ct. at 1663.

Plaintiff's constitutional and RLUIPA claims against the Defendants and against TDCJ in their official capacities lack an arguable basis in law or fact and the court **RECOMMENDS** that such claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### III.   CONCLUSION, RECOMMENDATION, AND TRANSFER

Having carefully considered Plaintiff's factual allegations, his testimony, his claims, and the applicable law, the court finds that Plaintiff has failed to state cognizable constitutional claims for violation of his right to free exercise of religion, to be free from unreasonable search or seizure, or for bodily integrity. The court further finds that Plaintiff's claims based on RLUIPA lack an arguable basis in law or fact. The court, therefore **RECOMMENDS**:

1. That Plaintiff's constitutional claim and claims under RLUIPA be **DISMISSED WITH PREJUDICE AS FRIVOLOUS,** as to all Defendants, as asserted against them in their individual and official capacities; and

2. That the United States District Judge **DECLINE** to exercise pendent jurisdiction over Plaintiff's state law claims.

**IN THE ALTERNATIVE**, the court notes that the Court of Appeals for the Fifth Circuit has ordered briefing in the case of *Domingo Robledo v. Richard Leal*, 12-10441. Because of the similar issues involved, a stay may be appropriate in this matter. Therefore, the court **ALTERNATIVELY RECOMMENDS** that this matter be stayed pending a decision by the Fifth Circuit in *Robledo*.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to any attorney of record by first class mail or electronic notification.

Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

**IT IS ORDERED** that the transfer of this case to the United States magistrate judge is terminated, and the case is hereby transferred to the docket of United States District Judge Sam R. Cummings.

DATED this 20th day of November, 2012.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**